IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LaSHAWN GOOD, #32917, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-01249-JPG |
| | ) |
| DR. MARCOWITZ, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**GILBERT, District Judge:**

Now before the Court for consideration is a Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Defendant Dr. Marcowitz ("Dr. Marcowitz") (Doc. 31). Dr. Marcowitz seeks dismissal of this action based on Plaintiff LaShawn Good's failure to exhaust his available administrative remedies at St. Clair County Jail before filing suit against him in federal court. *Id*. Good opposes summary judgment. (Doc. 33).

On August 18, 2022, this Court held an evidentiary hearing consistent with *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). The Court consolidated this case with three other civil rights actions for the limited purpose of the *Pavey* hearing (Doc. 40): *Combs, Jr. v. Watson, et al.*, Case No. 21-cv-00071-JPG (S.D. Ill. 2021) (Doc. 32); *Brown v. Watson, et al.*, Case No. 21-cv-00138-JPG (S.D. Ill. 2021) (Docs. 70, 74, and 77); and *Hollins v. Watson, et al.*, Case No. 21-cv-00161-JPG (S.D. Ill. 2021) (Docs. 46, 48, and 52). All four cases involve St. Clair County Jail inmates, the same grievance procedure, and the same or similar defendants and claims.

1

At the consolidated *Pavey* hearing, Defendants presented the testimony of Captain Shan Collins,[1] and Plaintiffs had an opportunity to cross-examine him. The Court then took the matter under advisement. For the reasons explained in more detail below, the Court finds that St. Clair County Jail's grievance procedure, as written during the relevant time period, was so confusing that it was incapable of use. The Prison Litigation Reform Act, 42 U.S.C. § 1997e, requires prisoners to exhaust available remedies before bringing suit. Administrative remedies based on St. Clair County Jail's grievance procedure, in effect during the relevant time period, were unknowable and consequently unavailable to Good. Accordingly, all pending summary judgment motions shall be **DENIED**.

## BACKGROUND

On October 12, 2021, LaShawn Good filed this civil rights action for alleged violations of his constitutional rights at St. Clair County Jail ("Jail"). In the First Amended Complaint, Good claims he was denied adequate medical care for injuries he sustained in an inmate attack at the Jail on or around May 30, 2021. (Doc. 12). Following the attack, he was taken to a hospital for treatment of his injuries and diagnosed with a broken jaw, broken nose, and missing teeth. *Id*. When he returned to the Jail with treatment instructions, Dr. Marcowitz allegedly failed to follow the instructions. *Id*. Consequently, Good suffered excruciating pain and permanent injuries. *Id*. Following this Court's initial screening of the First Amended Complaint under 28 U.S.C. § 1915A, Good was allowed to proceed with a claim against Dr. Marcowitz for denying him adequate medical care for the broken jaw, broken nose, and lost teeth, in violation of his rights under the Eighth or Fourteenth Amendment.[2] (Doc. 13).

---

[1] Shan Collins identified himself as the St. Clair County Jail Captain and Assistant Jail Superintendent. For ease of reference, the Court will refer to him as "Captain Collins."

[2] The Fourteenth Amendment governs claims brought by a pretrial detainee, and the Eighth Amendment governs the claims of a convicted person. Although Good's exact legal status during the relevant time period

Dr. Marcowitz filed for summary judgment on the issue of exhaustion. (Doc. 31). In the motion, Dr. Marcowitz asserts that Good submitted a single Captain's Request[3] before commencing this action. (Doc. 32, ¶ 9; Doc. 32-1, p. 2). Because Good did not exhaust his available remedies before bringing suit, Dr. Marcowitz seeks summary judgment in his favor and dismissal of this action against him. (*See* Docs. 31 and 32). Good opposes summary judgment on grounds that he attempted to exhaust his available administrative remedies at the Jail, but remedies were unavailable to him due to the confusing grievance procedure and staff's failure to address his complaints. (Doc. 33).

**A.    Captain's Request: August 18, 2018**

In his Captain's Request dated August 18, 2021, Good complains of inadequate medical care for injuries he suffered in the attack. (Doc. 32-1, p. 2). Good states that he was housed in the Jail's infirmary while his jaw healed. *Id*. During this time, he visited an outside physician at Mercy Hospital who recommended either re-breaking his jaw or letting it continue to heal. (Doc. 32, ¶ 10; Doc. 32-1, p. 2). Good complained that Dr. Marcowitz improperly released him prematurely from the infirmary on August 18, 2018. *Id*. Good saw Dr. Marcowitz after his work shift ended and asked the doctor why he released Good from the infirmary when his jaw was not yet healed. *Id*. Dr. Marcowitz replied, "your jaw is healed," and then said "he didn't give a f**k." *Id*. Good wrote that four individuals witnessed this interaction and signed the space on the Request

---

was unclear from the allegations in the Complaint, his claims survived screening under both possible legal standards pursuant to 28 U.S.C. § 1915A.

[3] The form used by Good bears the title of "St. Clair County Sheriff's Department Detainee Request - Complaint." (Doc. 32-1, p. 2). Dr. Marcowitz variously refers to this document as a "captains request," "Request form," and a "August 18 Request." (Doc. 32). In his testimony, Captain Collins also refers to the form as a "complaint/request," "complaint," and a "request." The Jail's grievance procedure refers to this same form as the "Complaint/Request Form" and the "Captains request." (Global Ex. 1).

form above "supervisor's actions." *Id*. Good also signed the request in the space designated for an "Officer" and wrote "Detainee" beside his signature. *Id*.

On the bottom half of the same form, an unidentified person responded. *Id*. The individual indicated that Good repeatedly asked for medical records to support his request for a mattress. *Id*. The response then states, "per Dr. Marcowitz, an extra mattress is not needed" and added that "the quote above is not exactly right and certainly out of context as we were not discussing your jaw." *Id*. This response contains no name and no date. *Id*.

Good does not dispute these facts. (*See* Docs. 33 and 33-1). Good explains that he filled out and submitted a "Grievance Form" that restated his complaint / request verbatim on the same date he received this response. (Doc. 32-2, ¶¶ 4-7). At the time, inmates in the general population used an electronic kiosk for complaints / requests and grievances. *Id*. at ¶¶ 7-11. However, he was in the infirmary without access to the kiosk, so he wrote his grievance on a paper form. *Id*. Good never received a copy or a response to his handwritten grievance. *Id*.

**B.     Electronic Captain's Requests: November 2-10, 2021**

After filing suit on October 12, 2021, Good filed a Captain's Request electronically on November 2, 2021, stating, "Have been asking for my medical records for my lawsuite (sic) so I can send out my 1983 form from May 30, 2021 til 8-17-21 would someone please help me thank you." (Doc. 32, pp. 8-10; Doc. 32-1, pp. 4-11). He filed two additional Captain's Requests electronically on November 4, 2021, and November 10, 2021, seeking copies of his medical records for his 1983 civil suit. *Id*. The shift commander responded, by explaining "this does not meet the grievance requirements." *Id*. The captain approved this response for all three electronic requests. *Id*. Good filed a First Amended Complaint on November 15, 2021. (Doc. 12).

4

**APPLICABLE LEGAL STANDARDS**

A.  **The Prison Litigation Reform Act**

Lawsuits filed by pretrial detainees and convicted persons, alike, are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA states, in no uncertain terms, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion of available administrative remedies is a precondition to suit, and the Supreme Court has interpreted the PLRA to require "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).  This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

To properly exhaust, an inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require."  *Pozo*, 286 F.3d at 1025.  Strict compliance with the Jail's grievance process is required.  *Locket v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019); *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993) (Courts are "not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies.").  Failure to properly exhaust all available remedies before filing suit is grounds for dismissal of the lawsuit.  *Pavey*, 544 F.3d at 741 ("Until the issue of exhaustion is resolved, the Court cannot know whether it is to decide the case or the prison authorities are to.").

The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."

5

*Woodford*, 548 U.S. at 93; *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 537 (7th Cir. 1999) (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation."). The requirement allows the Jail's administration an opportunity to fix the problem and mitigate the damage to a plaintiff. *Pozo*, 286 F.3d at 1023-24. Allowing otherwise would frustrate the purpose of the grievance process. *Porter v. Nussle*, 534 U.S. 516, 526 (2002). On the issue of exhaustion, the defendants have the burden of proof. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

**B.     Summary Judgment**

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey*, 544 F.3d at 739-41. The court decides contested issues regarding exhaustion and makes limited findings of fact. *Id*. at 740-41. "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are decided by the judge and not a jury. *Id*.

**C.     Grievance Procedure**

The St. Clair County Jail Grievance Procedure that was in effect during the relevant time period (*i.e.*, 2021) states:

**GRIEVANCE PROCEDURE**

Superintendents Call

Superintendent's call is a time set aside for handling complaints that cannot be handled through normal channels. **(Ask for Complaint / Request Form)** In order to see the Superintendent regarding such a matter, you must submit a request in writing. Request forms are available and may be obtained from any officer on duty. Complete the requested information on the form and return it to the block officer. Your request will be forwarded through the proper channels. Your request will be screened and if it is something that can be handled by the officer or Sergeant on duty they will do it. For matters in which they cannot be handled, you will be called out at a time to speak with the Jail Superintendent or his designate.

Step 1. A grieving detainee shall within 24 hrs. after he/she learns of circumstances or conditions which prompted the grievance, submit the grievance to the shift supervisor, in writing, informing him/her of the grievance and the particulars concerning it. The immediate supervisor shall provide a written response to the grieving detainee within 3 days after receiving the grievance. The original will be forwarded to the Jail Superintendent.

Step 2. If the grievance is not resolved to the detainee's satisfaction, the detainee may submit the grievance to the Assistant Jail Superintendent by summarizing the grievance in writing within forty eight (48) hours through the on duty shift supervisor. The grievance must be submitted to the Jail Superintendent within 3 days (not including weekends and holidays) of the decision of the Assistant Superintendent. The Jail Superintendent will review the response(s) and approve/disapprove them; if he disapproves them, he will take the necessary action to revise the previous response(s) according to the St. Clair County Jail Policies and Procedures Manual or to his professional opinion in a fair and impartial manner and return to the detainee within three (3) duty days. This shall constitute the final resolution of the grievance.

Note: Detainee Grievance Forms can be obtained from any supervisor or correctional officer. The Dress-Out Officer is responsible for briefing the grievance procedure to detainees prior to them being assigned to their respective housing units. A Captains request must be submitted prior to the grievance procedure. If no response is received within 15 calendar days, then the Jail Superintendent needs to be notified.

(*See* Global Ex. 1, pp. 20-21) (emphasis in original).

## ANALYSIS

St. Clair County Jail's Grievance Procedure suffers from numerous problems. These issues include its overall structure, poor organization, omission of deadlines, lack of clarity, inconsistent use of terminology, inconsistent interpretation, and inconsistent real world application. A plain reading of the grievance procedure reveals these flaws, which are underscored by the defendants' written submissions and witness testimony.

### A.   Overall Structure

The structure of the grievance procedure is confusing. Below the heading, "GRIEVANCE PROCEDURE," are four paragraphs containing instructions for filing complaints at the Jail. These paragraphs are arranged in the following order: (1) Superintendent's Call; (2) Step 1; (3) Step 2; and (4) Note. (*See* Global Ex. 1).

The first paragraph addresses Superintendent's Call. However, Superintendent's Call isn't part of the grievance process at all, according to Dr. Marcowitz and Captain Collins. Notably, Dr. Marcowitz's motion omits this paragraph entirely from the description of the grievance process. (*See* Docs. 31 and 32). Captain Collins testified that Superintendent's Call is the step of last resort. When the grievance procedure does not resolve the inmate's issue, this step offers one final avenue to relief. Because the step isn't part of the grievance process, it doesn't belong under the heading "GRIEVANCE PROCEDURE." Even so, it occupies the entire first paragraph.

Dr. Marcowitz point to the second and third paragraphs, entitled "Step 1" and "Step 2," as describing the official grievance procedure. (*See id.*). Step 1 instructs an inmate to file a grievance with his or her shift supervisor. Step 2 instructs the inmate to forward any unresolved grievance to the assistant jail superintendent and, if still unresolved, on to the jail superintendent for final resolution. If Step 1 and Step 2 represent the Jail's entire grievance procedure, then these two

paragraphs should not be buried in the middle of a four-paragraph document. The two paragraphs describing Step 1 and Step 2 should stand alone under the heading, "GRIEVANCE PROCEDURE."

The fourth paragraph contains the actual first step of the process, according to Dr. Marcowitz. (Doc. 32, ¶ 3). It includes the following instruction: "A Captains (sic) request must be submitted prior to the grievance procedure." (*Id.*; *see also* Global Ex. 1). If this is the very first step an inmate must take to address a complaint, then this instruction does not belong in the final paragraph of the procedure; it belongs at the beginning of the procedure.

If arranged in order of the steps an inmate must take to address a complaint, the procedure would consist of Paragraph 4, Paragraph 2, Paragraph 3, and Paragraph 1, in that order. If arranged in order of the Jail's official grievance procedure, it would consist of Paragraph 2 and Paragraph 3 and nothing more. And, if arranged in order of the Jail's actual grievance procedure, it would consist of Paragraph 4, Paragraph 2, and Paragraph 3, in that order. But, the procedure, as written, follows no logical order and makes little sense.

**B.     Poor Organization**

The organization of each paragraph only adds to the confusion. By way of example, the Court focuses on the final paragraph, entitled "Note," which again states:

> Note: Detainee Grievance Forms can be obtained from any supervisor or correctional officer. The Dress-Out Officer is responsible for briefing the grievance procedure to detainees prior to them being assigned to their respective housing units. A Captains request must be submitted prior to the grievance procedure. If no response is received within 15 calendar days, then the Jail Superintendent needs to be notified.

(*See* Global Ex. 1). This paragraph consists of four sentences. All four sentences focus on different topics. The first describes the form used to file a grievance, which presumably refers to Step 1 and/or Step 2 above. The second sentence identifies who is responsible for instructing detainees

9

how to use the grievance procedure and when, which presumably refers to the overall process. The third sentence describes the actual first step, *i.e.*, submitting a captain's request. This initial step is contained in the second-to-last sentence of the entire procedure and is not underlined, highlighted, or emphasized in any way. The final sentence provides instructions for notifying the Jail Superintendent if no response is received to the captain's request, without indicating whether this refers to an appeal of the captain's request, Step 1, Step 2, or the Superintendent's Call.

**C.     Omission of Deadlines**

The procedure consistently omits deadlines for action on the part of inmates and jail personnel. For example, the final paragraph states: "A Captains request must be submitted prior to the grievance procedure." (*See* Global Ex. 1). However, it does not indicate when the inmate should submit the captain's request. The next sentence instructs the inmate to contact the jail superintendent "[i]f no response is received within 15 calendar days." (*See id.*). Jail personnel and inmates, alike, are left wondering: within 15 calendar days of what? The procedure does not say. It could be within fifteen days of: the incident prompting the captain's request, the date the inmate submits the captain's request, the date that jail personnel pick up the captain's request, or something else altogether. The procedure does not set forth a clear timeline.

**D.     Lack of Clarity**

The instructions do not clarify whether inmate action is required sequentially or in parallel. A comparison of the final paragraph and Step 1 illustrates this point. Recall that a captain's request is the first actual step in the process, and an inmate is required to notify the Jail Superintendent if no response is received within 15 days. At the same time, Step 1 states: "A grieving detainee shall within 24 hrs. after he/she learns of circumstances or conditions which prompted the grievance, submit the grievance to the shift supervisor, in writing, informing him/her of the grievance and the

particulars concerning it." (*See* Global Ex. 1).  It is unclear whether the inmate must file a captain's request and a grievance at the same or nearly-the-same time or wait for a response to the captain's request and then file a grievance.  The instructions confuse, rather than clarify, the matter.

E.   **Inconsistent / Confusing Use of Terminology and Forms**

The inconsistent use of terms, such as "captain's request," "complaint / request form," "grievance," and "detainee grievance form," only muddy the waters.  In the final paragraph of instructions, describing the first actual step in the process, the procedure refers to a "Captain's request" and a detainee grievance form.  The superintendent's call refers to a complaint / request, and Steps 1 and 2 refer to a grievance.  Whether these terms overlap or have entirely different meanings is not at all clear from the written procedures.  Captain Collins testified that in practice, the "complaint / request form" has been used for both the "Captain's request" and to initiate the "Superintendent's Call" procedure of last resort.  Testimony also confirms that the Jail's forms have changed over time, making use of titles that did not correspond to steps in the process.

F.   **Inconsistent Interpretation**

As a result of the problems discussed above, the Jail's grievance procedure is susceptible to numerous interpretations.  Dr. Marcowitz describes the process as straightforward.  (Doc. 32). However, his description is not consistent with Captain Collins' description of the same procedure. Their inconsistencies call into question the simplicity of the process.

According to Dr. Marcowitz, the "Captains Request is the first step to initiating the Grievance Procedure, with the need to inform the Jail Superintendent should no response be received within 15 calendar days." (Doc. 32, ¶ 3).  A "grievance" may be submitted following submission of the "Captain's Complaint" within 24 hours of learning of the circumstances or conditions prompting the grievance.  (*Id*. at ¶ 4). If the "grievance" is not resolved to the detainee's

11

satisfaction, the detainee may submit the grievance to the Assistant Jail Superintendent by summarizing the grievance in writing within forty-eight hours through the on-duty shift supervisor. (*Id*. at ¶ 5). Once the Assistant Jail Superintendent issues a decision, it will be submitted to the Jail Superintendent, who will review the response for approval. (*Id*. at ¶ 6). The Jail Superintendent's response shall constitute final resolution of the grievance. (*Id*. at ¶ 7). Put differently, a detainee must complete Paragraph 4, Paragraph 2, and Paragraph 3 of the Jail's grievance procedure, in that order, to exhaust their administrative remedies before bringing suit. Paragraph 1 should be disregarded.

At the *Pavey* hearing, Captain Collins testified that the grievance procedure is a two-step process. The first step is to submit a written captain's request / complaint. If the problem is not resolved, the second step is to file a written grievance. Put differently, a detainee should *either* comply with Paragraph 4, Paragraph 2, and Paragraph 3, described by Marcowitz, or complete Paragraphs 2 and 3, but it is not clear which controls. Either way, Paragraph 1 should be ignored.

**G.     Inconsistent Real World Application**

Captain Collins, the defendants' only witness, repeatedly acknowledged that the Jail's grievance procedure, as written during the relevant time period, is confusing--so confusing, in fact, that inmates were not actually required to follow it. Moreover, the procedure at issue is no longer in effect. Captain Collins testified that it has been re-written to clarify the grievance procedure, but he could not recall when the revised procedure took effect and was distributed to detainees.

Despite this testimony, Dr. Marcowitz filed for summary judgment against Good. The doctor argues that Good failed to exhaust his administrative remedies at the Jail before filing suit. Defendants in the three other cases also filed for summary judgment on the same grounds. The consolidated *Pavey* hearing addressed eight summary judgment motions stemming from the same

procedure. If defendants did not expect the inmates to comply with the procedure, it is unclear why every single defendant filed for summary judgment on the issue of exhaustion.

To the extent Dr. Marcowitz argues that Good did not include sufficient detail about his complaints to put the doctor on notice of any problem, the Court rejects this argument. The grievance procedure does not define what must be included in a captain's request, complaint / request, or grievance. The procedure states that a grievance must include "particulars," but this term is undefined. Captain Collins also testified that when jail officials respond to detainee complaints / grievances, they do not inform the detainee when their form lacks sufficient particulars or is otherwise flawed. The Court will not require Good to guess who, what, when, or how to grieve his complaints at the Jail, given the procedure at issue. Dr. Marcowitz has not met his burden of establishing Good's failure to exhaust available remedies.

Although the Seventh Circuit demands strict compliance with the PLRA's exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is only required to exhaust administrative remedies that are actually available to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Id.*; *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). The United States Supreme Court has adopted a definition of "available" that means "capable of use for the accomplishment of a purpose" and that which is "accessible or may be obtained." *See Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (internal quotations and citations omitted). In this context, an inmate is required to exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (citing *Booth*, 532 U.S. at 738).

Three circumstances generally render a prison's grievance process unavailable because it is not capable of use to obtain relief. *Ross*, 578 U.S. at 643. First, an administrative procedure is unavailable when it operates as a simple dead end, despite what the regulations or guidance materials may state. *Id*. (citing *Booth*, 532 U.S. at 736, 738) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). This commonly occurs when an administrative official has apparent authority and refuses to exercise it or when a grievance handbook directs an inmate to submit his grievance to an administrative office that disclaims any capacity to consider the grievance. *Ross*, 578 U.S. at 642. Second, an administrative scheme might be so confusing that it is incapable of use. In other words, a grievance process exists, but if "no ordinary prisoner can make sense of what it demands," that process is "unknowable" and thus unavailable. *Reid v. Balota*, 962 F.3d at 329 (quoting *Ross*, 578 U.S. at 642). Finally, a grievance process is unavailable when prison officials thwart an inmate's efforts to exhaust his administrative remedies through "machination, misrepresentation, or intimidation." *Id*. The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

No ordinary person could make sense of the Jail's grievance procedure in effect during the relevant time period. As written, it was unknowable and incapable of use by Good. As such, the grievance procedure at issue was unavailable to him. The fact that Good's Captain's Request was returned with an unsigned and undated response, and his subsequent grievance was ignored only supports this finding of unavailability. In reality, Good had no avenue to relief at the Jail before bringing suit to address his claims against Dr. Marcowitz in federal court. Accordingly, summary judgment shall be denied.

#### CONCLUSION

**IT IS ORDERED** that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Dr. Marcowitz (Doc. 31) is **DENIED**. **COUNT 1** against this defendant shall proceed past summary judgment.

The matter of exhaustion of administrative remedies now being resolved, the four cases are **NO LONGER CONSOLIDATED** and shall move forward **SEPARATELY**. Moreover, the stay on merits discovery is **LIFTED**, and the parties can commence discovery on the merits of Plaintiff's claims. The Court will enter a separate scheduling order to set forth discovery and dispositive motion deadlines.

**IT IS SO ORDERED**.

DATED: 8/29/2022                                     s/J. Phil Gilbert
                                                    **J. PHIL GILBERT**
                                                    **United States District Judge**